# United States Tax Court

T.C. Memo. 2024-97

KRISHAN K. GOSSAIN AND KAVITA GOSSAIN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 21812-22.                    Filed October 21, 2024.

————

Krishan K. Gossain and Kavita Gossain, pro se.

*Hans Famularo*, *Christine A. Fukushima*, *Krystle J. Andujar Garcia*, *Jeffrey A. Rodgers*, and *Brian P. Beddingfield*, for respondent.

## MEMORANDUM OPINION

MORRISON, *Judge*: This case was tried on November 27, 2023. On November 28, 2023, we rendered Oral Findings of Fact and Opinion pursuant to the authority granted by section 7459(b)[1] of the Code and Rule 152. On January 16, 2024, the Court filed the Oral Findings of Fact and Opinion. On May 16, 2024, respondent filed a Motion for Leave to File Out of Time Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161 and lodged a Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161. On May 22, 2024, petitioners filed a Motion for Leave to File Out of Time Motion for Reconsideration of the Opinion and lodged a Motion for Reconsideration of the Court Opinion of January 16, 2024. On May 29, 2024, we granted the Motions

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** for Leave and filed the Motions for Reconsideration. On June 18, 2024, respondent filed a Response to Petitioners' Motion for Reconsideration of Fact and Opinion. On June 27, 2024, petitioners filed a Response to Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161. We will (1) withdraw our Oral Findings of Fact and Opinion rendered on November 28, 2023, and served on the parties on January 16, 2024, (2) grant respondent's Motion for Reconsideration, and (3) deny petitioners' Motion for Reconsideration.

There are differences between this Memorandum Opinion and the Oral Findings of Fact and Opinion. Some differences are attributable to the different wording typically used in a Memorandum Opinion. Some differences relate to developments in the case after the filing of the Oral Findings of Fact and Opinion. All other differences are noted in footnotes to this Memorandum Opinion.

On July 8, 2022, respondent issued petitioners a Notice of Deficiency.[2] For tax year 2018, the Notice of Deficiency determined a $10,294 deficiency and a $2,058.80 accuracy-related penalty. For tax year 2019, the Notice of Deficiency determined a $12,781 deficiency and a $2,556.20 accuracy-related penalty. We have jurisdiction under section 6213(a).

## *Background*

Petitioners resided in California when they filed their Petition. Petitioners have the burden of proof. *See* Rule 142(a)(1).

The Notice of Deficiency made the following noncomputational adjustments to petitioners' income for 2018:

- Other income was increased by $400; petitioners have conceded this issue.

- Ordinary dividends were increased by $180.

- Taxable interest was increased by $105; respondent has conceded this issue.

---

[2] In our Oral Findings of Fact and Opinion, we had stated: "On *October 6*, 2022, respondent issued petitioners a notice of deficiency." (Emphasis added.)

**[*3]**
- Medical expense deductions were reduced from $25,570 to $19,436. The parties have stipulated that the allowable amount is $23,647.[3]

- Real estate loss deductions, claimed in the amount of $58,514, were allowed in the amount of $11,033, with the disallowed $47,481 allowed as a carryforward.[4]

The Notice of Deficiency made the following noncomputational adjustments to petitioners' income for 2019:

- Medical expense deductions were reduced from $27,500 to $19,217. The parties have stipulated that the allowable amount is $21,416.[5]

- The Schedule E, Supplemental Income and Loss, mortgage interest deduction was increased by $41; respondent concedes this issue.

- Ordinary dividends were increased by $188; respondent has conceded this issue.

- Taxable interest was increased by $65; respondent has conceded this issue.

---

[3] Petitioners contend that they are entitled to a deduction for $4,411.36 of medical expenses paid for petitioners' son. But as respondent explained in the Response to Motion for Reconsideration of Findings or Opinion, this amount is included in the $23,647 amount.

[4] In our Oral Findings of Fact and Opinion, we had stated: "Real estate losses deductions, claimed in the amount of $58,514, were allowed in the amount of $25,000, with the disallowed $33,514 allowed as a carryforward."

[5] In our Oral Findings of Fact and Opinion, we had stated: "The parties have stipulated that the allowable amount is $6,084."

Petitioners contend that they are entitled to a deduction for $2,199.04 of medical expenses paid for petitioners' son. But as respondent explained in the Response to Motion for Reconsideration of Findings or Opinion, this amount is included in the $21,416 amount.

**[\*4]** • Real estate loss deductions, claimed in the amount of $62,132, were allowed in the amount of $9,041, with the disallowed $53,091 allowed as a carryforward.[6]

For both years, the Notice of Deficiency explained the adjustments regarding real estate losses as follows: "You have not established that you meet the requirements of Internal Revenue Code section 469(c)(7). Therefore, your rental losses are determined to be passive." The Notice of Deficiency also provided the following explanation for the adjustments to petitioners' real estate deductions: "Passive losses are also allowed to the extent they qualify for the special allowance for rental real estate activities. Therefore, your allowable loss for the taxable year 2018 is $11,033.00 and your allowable loss for the taxable year 2019 is $9,041.00."[7]

*Discussion*

The remaining issues for the Court to decide are whether the losses from rental real estate are passive losses for 2018 and 2019, whether petitioners' income includes the $180 increase in ordinary dividends for 2018, and whether petitioners are liable for the accuracy-related penalties for 2018 and 2019. We hold that the losses are passive, that petitioners' income includes the $180 amount, and that petitioners are liable for the penalties.

I. *Deductions for rental activity*

In 1994 Mr. Gossain began renting out a California property he owned. Petitioners introduced an activity log stating that they worked the following hours on the California property: 751 hours for 2009, 751 hours for 2010, 757 hours for 2011, 753 hours for 2014, and 752 hours for 2016.

In 2016 Mr. Gossain bought a property in Hawaii. In 2017 Mr. Gossain began renting out the Hawaii property.

Petitioners introduced an activity log stating the number of hours they worked on the California and Hawaii properties during 2018. The

---

[6] In our Oral Findings of Fact and Opinion, we had stated: "Real estate loss deductions, claimed in the amount of $62,132, were allowed in the amount of $25,000, with the disallowed $37,132 allowed as a carryforward."

[7] In our Oral Findings of Fact and Opinion, we had stated: "The notice of deficiency also explained that the $25,000 amounts were allowed as deductions under the 'special allowance for rental real estate activities.'"

**[*5]** log states that (1) Mr. Gossain worked 117.5 hours on the California house, (2) Mrs. Gossain worked 58.5 hours on the California house, and (3) the Gossains worked 4 hours on the Hawaii house. The four-hour entry does not specify which spouse performed the work. The total hours worked[8] on the California house was 117.5 plus 58.5, equaling 176 hours. The total hours listed on the activity log are 125.5, but it is not entirely clear how this number was computed.

Mr. Gossain had a full-time job during 2018 and 2019 where he worked at least 40 hours per week.

A. *Legal principles*

Section 469(a)(1) disallows a deduction for a passive activity loss. A passive activity loss is the amount, if any, by which the aggregate losses from all passive activities for the year exceed the aggregate income from all passive activities for such year. § 469(d)(1).

A passive activity is defined as any activity which involves the conduct of a trade or business and in which the taxpayer does not materially participate. § 469(c)(1). Section 469(c)(2) provides that except as provided in section 469(c)(7), the term passive activity includes any rental activity. Section 469(c)(4) provides that section 469(c)(2) is applied without regard to whether or not the taxpayer materially participates in the activity. It follows from section 469(c)(4) that a rental activity is passive even if the taxpayer materially participates in the activity.

However, section 469(c)(7)(A)(i) provides that if section 469(c)(7)(B) applies to a taxpayer for a tax year, then section 469(c)(2) does not apply to any rental real estate activity of such taxpayer for such tax year. Section 469(c)(7)(B) applies to a taxpayer for a taxable year if (1) more than one-half of the personal services performed by the taxpayer during the tax year are provided in real property trades or businesses in which the taxpayer materially participates and (2) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Section 469(c)(7)(B) provides that in joint return situations, these dual requirements are satisfied if and only if either spouse separately satisfies these requirements. A taxpayer to

---

[8] The word "worked" was not in our Oral Findings of Fact and Opinion.

**[\*6]** whom section 469(c)(7) applies is commonly known as a real estate professional although this term does not appear in the statute.

For a taxpayer's hours of service in a real property trade or business to count towards the satisfaction of the 750-hour test or the one-half test, the taxpayer must materially participate in the real property trade or business. § 469(c)(7)(B); Treas. Reg. § 1.469-9(c)(3). For purposes of determining if a taxpayer has materially participated in a real property trade or business, the activities of the taxpayer's spouse are treated as work performed by the taxpayer. Treas. Reg. § 1.469-9(c)(4); Temp. Treas. Reg. § 1.469-5T(f)(3).

Section 469(i)(1) provides that section 469(a) does not apply to that portion of the passive activity loss for any tax year which is attributable to all rental real estate activities with respect to which such individual actively participated in such tax year. Section 469(i)(2) provides that the aggregate amount to which section 469(i)(1) applies shall not exceed $25,000.

Temporary Treasury Regulation § 1.469-5T(a) sets forth seven alternative ways in which an individual will be treated as materially participating in an activity. We need only to discuss the third and fifth methods in reference to this case.

The third method is if the individual participates in the activity for more than 100 hours during the tax year, and the individual's participation in the activity for the year is not less than the participation in the activity of any other individual. *Id.* subpara. (3). The fifth method is if the individual materially participates in the activity for any five tax years (whether or not consecutive) during the ten tax years that immediately precede the tax year at issue. *Id.* subpara. (5).

Section 469(h)(5) provides that in determining whether a taxpayer materially participates in an activity, the participation of the spouse of the taxpayer is taken into account. A regulation elaborates that, in the case of any married individual, any participation by such person's spouse in the activity during the taxable year (even if the spouse does not own an interest in the activity and even if the spouses do not file a joint return) is treated as participation by such person in the activity during the taxable year. Temp. Treas. Reg. § 1.469-5T(f)(3).

[*7]    B.    *Application*

In applying these legal principles, the crucial legal issue is whether petitioners' rental property activity during each year, consisting of the Hawaii and California properties, was a passive activity.

In addressing this issue we first consider whether petitioners' rental property activity involved the conduct of a trade or business.

An activity is a passive activity only if it involves the conduct of a trade or business.  § 469(c)(1)(A).  Section 469(c)(6) provides that the term trade or business includes any activity with respect to which expenses are allowable as a deduction under section 212.  Section 212 provides for a deduction for all ordinary and necessary expenses paid or incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.  It is undisputed that petitioners' rental activity is an activity with respect to which expenses are allowable as a deduction under section 212.  We conclude that petitioners' rental activities involved the conduct of a trade or business.

A rental activity is a passive activity under section 469(c)(2) unless the taxpayer is a real estate professional under section 469(c)(7)(B).  A taxpayer is a real estate professional only if the taxpayer performs more than 750 hours of services in real property trades or businesses in which the taxpayer materially participates, and if more than one-half of the personal services performed by the taxpayer are performed in real property trades or businesses in which the taxpayer materially participates.  § 469(c)(7)(B).

Petitioners contend that for 2018 and 2019 Mr. Gossain materially participated in the rental property activity for five of the previous respective ten years by satisfying for each of the five prior years the third method.  *See* Temp. Treas. Reg. § 1.469-5T(a)(3).  In other words, petitioners contend that for each of the five prior years, Mr. Gossain participated in the rental activity for more than 100 hours and that his participation in the rental activity was not less than the participation in the activity of any other individual for the year.  This counting of hours includes the hours worked by Mrs. Gossain.  *See* § 469(c)(7)(A), (h)(5); Temp. Treas. Reg. § 1.469-5T(f)(3).

We assume without deciding that for each of the prior five years, Mr. Gossain participated in the rental activity for more than 100 hours

**[*8]** and that his participation in the rental activity was not less than the participation in the activity of any other individual for the year.

Having satisfied the third regulatory test for five of the ten prior years, Mr. Gossain is assumed to have materially participated in the rental property activity for each of those five prior years.

It also follows that we assume that for 2018 and 2019, Mr. Gossain satisfied the fifth regulatory test and that therefore he materially participated in petitioners' rental activity for 2018 and 2019.

Under section 469(c)(2), even if a taxpayer materially participates in an activity, the activity is still considered a passive activity if (1) it is "any rental activity" and (2) the taxpayer is not a real estate professional under section 469(c)(7). It is undisputed that petitioners' rental property activity is "any rental activity." We therefore move on to consider whether Mr. Gossain is a real estate professional under section 469(c)(7)(B).

Respondent contends that Mr. Gossain was not a real estate professional during 2018 and 2019. To be a real estate professional, Mr. Gossain must satisfy both the 750-hour test and the one-half test. *See* § 469(c)(7)(B). The hours he worked on the rental properties include only the hours he personally worked on the rental properties,[9] not the hours Mrs. Gossain worked on the rental properties. *See* § 469(c)(7)(B) (flush text).

For 2018 and 2019, Mr. Gossain's hours worked are equal to 125.5 or less. Because these amounts are less than 750 hours, Mr. Gossain does not meet the 750-hour test for 2018. Also, because Mr. Gossain had a 40-hour-per-week job during 2018, he fails the one-half test.

Petitioners presented no evidence of Mr. Gossain's hours worked on rental activity during 2019. We therefore find that the number of hours he worked on rental activity during 2019 was zero. But even if we assume that the hours he worked during 2019 were between zero and 125.5 hours, the later number of hours appearing for him on the activity log for 2018, he still fails to satisfy the 750-hour test and the one-half test for 2019.

---

[9] In our Oral Findings of Fact and Opinion, we had referred to "rental propert*y*."

**[\*9]** It follows that Mr. Gossain is not a real estate professional under section 469(c)(7)(B) for either 2018 or 2019.[10]  This means that section 469(c)(2) applies to the rental activity.  Under section 469(c)(2), petitioners' rental property activity is passive activity.

We therefore sustain the determinations of the Notice of Deficiency regarding the tax treatment of the losses from petitioners' rental real estate for 2018 and 2019.

## II.  *Adjustment for ordinary dividends*

Petitioners reported no ordinary dividends for 2018 on the return. Respondent received a Form 1099–DIV, Dividends and Distributions, showing that Mr. Gossain received a $127 dividend from Computershare, Inc.  Respondent received Form 1099–DIV showing that Mrs. Gossain received a $53 dividend from Computershare, Inc.[11] In the Gossains' Response to respondent's First Request for Admissions (Doc. 13) petitioners admitted in paragraph 12 that Mr. Gossain[12] received $127 of ordinary dividends from Computershare, Inc., and admitted in paragraph 14 that Mrs. Gossain received $53 of ordinary dividends from Computershare, Inc.  The amount of dividend income received by petitioners for 2018 is $180.  We sustain the determination of the Notice of Deficiency in this regard.

## III.  *Penalties*

The next issue is the liability of petitioners for penalties under section 6662.

Section 6751(b)(1) requires personal written supervisory approval of the initial determination of a penalty assessment.  This supervisory approval is required to occur (1) before the assessment of a penalty and (2) before the relevant supervisor loses discretion whether to approve the penalty.  *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020); *Kraske v. Commissioner*, No. 27574-15, 161 T.C. (Oct. 26, 2023). The penalties were initially determined by the examiner.  On March 26,

---

[10] In our Oral Findings of Fact and Opinion, we had referred to "2018 *and* 2019."  (Emphasis added.)

[11] In our Oral Findings of Fact and Opinion, we had referred to "Computershare*s*, Inc." (Emphasis added.)

[12] In our Oral Findings of Fact and Opinion, we had used the word "they" instead of "Mr. Gossain."

**[*10]** 2021, the penalties were approved by the examiner's immediate supervisor. On July 8, 2022, the Notice of Deficiency was issued, determining penalties.[13] On a preponderance of evidence, we find that the penalties were approved by the supervisor when the supervisor possessed the discretion to approve the penalties.

The Petition requests a first-time abatement of the penalties. First-time abatement is a matter of administrative discretion. There is no first-time abatement exception found in the Code. At trial, petitioners did not make any arguments, or adduce any evidence, relevant to penalties. They have therefore waived any defense to penalties.[14]

At trial petitioners presented testimony and documents regarding respondent's conduct of examination and Appeals. This evidence was presented to support various arguments made by petitioners. First, petitioners contend that they have resolved their case at the examination stage. However, none of the documents presented by petitioners were signed by petitioners and therefore none of the documents conceivably represents a binding closing agreement. The one exception is Exhibit 504-P, which is a consent to extend the time for assessing tax for 2018. This document, although signed by petitioners, is not a settlement agreement and contains no terms of settlement. Second, petitioners contend that the Examination Division made computational errors in one or more documents issued by it before the Notice of Deficiency. Any such pre-Notice-of-Deficiency computational errors are irrelevant to the issues before us. *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). Third, petitioners argued that respondent's Appeals Division failed to consider their case. The remedy for any such failure is petitioners' right to seek Tax Court redetermination of the deficiencies, a right that petitioners have exercised. The Tax Court is not authorized to resolve issues in favor of

---

[13] In our Oral Findings of Fact and Opinion, we had stated: "On *October 6*, 2022, the notice of deficiency was issued determining penalties." (Emphasis added.)

[14] In their Motion for Reconsideration, petitioners contend that the mistakes made on their return were inadvertent and that the Court should therefore allow them to file amended returns. In our view, this contention does not identify an error of fact or law in our Oral Findings of Fact and Opinion. Anyway, it is raised too late in the proceeding to be considered.

In their Motion for Reconsideration, petitioners contend that they are entitled to first-time abatement of penalties. This contention does not present a substantial error of fact or law. It is raised too late in the proceeding to be considered.

**[*11]** petitioners as a remedy for any prior failure by the Appeals Division to resolve their case.

Given the foregoing,

*An appropriate order will be issued, and decision will be entered under Rule 155.*